**Robert Kent CEARLEY, Appellant,**

v.

**CROSS TIMBERS PRODUCTION COMPANY, INC., Appellee.**

**No. 08–92–00094–CV.**

Court of Appeals of Texas, El Paso.

May 19, 1993.

Abner Burnett, Burnett & Burnett, Inc., Odessa, TX, for appellant.

Robert E. Motsenbocker, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, TX, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a take-nothing summary judgment in a third-party personal injury suit in which the borrowed servant doctrine was applied to bar recovery. We affirm.

### Facts

In January 1988, Robert Cearley was working on an oil and gas lease owned and operated by Cross Timbers. He considered himself an employee of Crown Central Petroleum Corporation who paid his salary. He was working under the supervision of Joe Smith, an employee of Cross Timbers. He alleged that he had requested a ladder for his use in reading dynamometers attached to pump jacks, and that Cross Timbers was negligent in failing to provide a ladder or safe alternative for him in the performance of his work. He also alleged "[t]he Defendant, through its agents and/or employees enjoyed sufficient right to control the details of both manner and means by which the Plaintiff's work was completed so that it incurred a duty not to negligently cause injury to Plaintiff."

The deposition testimony of Bennie Kniffen, controller for Cross Timbers, established that Cross Timbers acquired Crown Central Petroleum's oil and gas properties

on January 1, 1988 and it hired about thirty-one employees of Crown Central. He testified Kent Cearley became an employee of Cross Timbers effective January 1, 1988. He said Crown paid the employee's wages and benefits until February 15 and then Cross Timbers reimbursed Crown Central for the amounts it had paid. He also testified that Cross Timbers was a subscriber under the Texas Worker's Compensation Act in January 1988. He said Cross Timbers had paid the worker's compensation premium for Mr. Cearley from January 1, 1988 until his deposition was taken in March 1991.

### Regular Employer

■ Since actual wages were paid in January 1988 by Crown Central and compensation benefits were paid by Crown Central's compensation carrier, there does exist a fact issue as to whether the sale of the oil and gas properties and the transfer of employment was effective January 1, 1988 or February 15, 1988 and whether at the time of the accident on January 7, 1988, Mr. Cearley was the regular employee of Crown Central or Cross Timbers. The summary judgment evidence does not establish that, as a matter of law, Mr. Cearley was a regular employee of Cross Timbers at the time of his accident.

### Borrowed Servant Doctrine

■ As Justice Pope wrote in *Sparger v. Worley Hospital, Inc.*, 547 S.W.2d 582, 583 (Tex.1977), "Texas has long recognized that a general employee of one employer may become the borrowed servant of another." Chief Justice Calvert stated the test by which to determine if one is a borrowed servant in *Producers Chemical Company v. McKay*, 366 S.W.2d 220, 225 (Tex.1963). He said: "If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees." Id. at 225. In that opinion, the Court quoted the following language from the United States Supreme Court opinion in *The Standard Oil Co. v. Anderson*, 212 U.S. 215, 221, 222, 29 S.Ct. 252, 254, 254, 53 L.Ed. 480 (1909):

'To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.' 366 S.W.2d 220 at 225–26.

■ The Court went a step further in clarifying the test in the opinion by Justice Greenhill in *J.A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327 (Tex.1968). In that opinion, the Court held that *consent* of the employee to be controlled by the borrowing employer was not required and that control of *all* the details of the work being performed was not essential.

### Issue of Liability

■ Under the Texas Workers' Compensation Act in effect at the time of the accident in 1988, an employer who provided compensation coverage for its employees was insulated from suits for damages for personal injuries. TEX.REV.CIV.STAT.ANN. art. 8306, § 3 (Vernon Supp.1993). Thus, Robert Cearley was prohibited from seeking damages for personal injuries from Cross Timbers if at the time he sustained his injuries, (1) he was a borrowed employee and (2) the employer had compensation coverage. The record established, without dispute, the second element and there is no issue raised in this case about that phase of the case.

■ As to whether Mr. Cearley was a borrowed servant, the Appellee relies exclusively upon the pleading of Mr. Cearley that Cross Timbers had the "right to control the details of both manner and means by which the Plaintiff's work was completed" to establish this element of the case. Courts have recognized that pleadings are a form of judicial admission which can be considered in support of a motion for summary judgment. *Galvan v. Public Utili-*

*ties Board,* 778 S.W.2d 580 (Tex.App.— Corpus Christi 1989, no writ); 3 McDonald, TEXAS CIVIL PRACTICE § 18:23[b] (1992). The Court in *Galvan* said such pleadings are not actually proof, but as judicial admissions, they are a waiver of proof. Cearley having admitted that Cross Timbers had the right to control the details of both the manner and means of his work, waived the necessity of proof on the first element of the issue of borrowed servant. The pleading meets the test enumerated in the McKay case, i.e., who controls the manner of performing the work.

### Conclusion

Based upon the judicial admission and the uncontroverted evidence offered in support of the motion for summary judgment, we conclude that the trial court correctly granted the motion. There are no material fact issues in dispute and the Appellee was entitled to judgment as a matter of law. Point of Error No. One is overruled.

The judgment of the trial court is affirmed.